Opinion delivered April 10, 1888.

---

No. 5666.

A. B. GARDNER AND WIFE *v.* G. G. RUNDELL.

1. TRUSTS—STATUTE OF FRAUD.—An agreement between two or more persons for the joint acquisition of land is not, within the meaning of the statute of frauds, a contract for the sale of land which, to be valid, must be in writing. Such a contract is neither prohibited by common or statute law, and when under such a contract the purchase is effected by one of the parties, and the deed is taken in his name, he holds in trust for his associates in the parol agreement, whether he advances only his proportion of the purchase money, or pays from his individual means the entire price under a parol agreement to be reimbursed by them at a future time. Such a trust is not a resulting trust, the latter being that trust which the law creates in favor of one who has furnished the entire purchase money by which title has been taken in the name of another.

2. SAME.—An agreement between two or more persons by which one of the parties agrees to advance money for the benefit of the other in payment for an interest in land already acquired, is not within the meaning of the statute of frauds a contract for the sale of real estate. If the party for whom the advance was made tender payment and demand a deed for his interest, in a suit to compel specific performance he is not bound to again tender the money in court. His rights were fixed by his tender in accordance with his contract, and from that date he was entitled to his pro rata of the rents and profits of the land.

APPEAL from Grayson. Tried below before the Hon. Richard Maltbie.

*Brown & Gunter, W. M. Peck, A. B. Person* and *J. R. Cowles,* for appellant: The agreement between the appellant and the appellee was for the sale of land, the purchase money to be paid

in the future, was not in writing, and therefore was void under the statute of frauds. (Rev. Stats., art. 2464.)

Appellee paid no part of the purchase money at or before the time that the title passed to appellant; therefore the said agreement created no equities in his favor, but was void under the statute of frauds. (Mead v. Randolph, 8 Texas, 191; Bracken v. Hambrick, 25 Texas, 411; Lacy v. Clements, 36 Texas, 661; Parker v. Coop, 60 Texas, 118; Perry on Trusts, sec. 133; Pinnock v. Clough, 42 Am. Dec., 521; Jackson v. Moore, 6 Cowan, 726; 1 Leading Cases in Equity, 336.)

The plaintiff in the court below did not pay the money into court at the time the suit was tried, nor tender it upon the trial of the case; and is therefore not entitled to recover the rents of the property. (Brock v. Jones, 16 Texas, 467; Tooke v. Bonds, 29 Texas, 425; Bank v. DeGrauw et al., 23 Wend., 322.)

*Wilkins & Patty* and *Hare & Head*, for appellee: The agreement between appellant and appellee was not for the sale of land, but was to acquire land together, and did not come within the statute of frauds. (James v. Fulcrod, 5 Texas, 512; Anderson v. Powers, 59 Texas, 213, and authorities there cited; Miller v. Roberts, 18 Texas, 16; Smith v. Crosby, 47 Texas, 122; Gibbons v. Bell, 45 Texas, 418; Jones v. Drake, 39 Texas, 142.)

GAINES, ASSOCIATE JUSTICE. Appellant, A. B. Gardner, and appellee, Randell, about the first of February, 1883, agreed to purchase the lot in controversy, which is situated in the city of Denison and has upon it a brick store house. Each was to pay one-half of the purchase money and were to hold equal interests in the property. In pursuance of the agreement, appellant went to Colorado City to make the purchase, appellee having handed him ten dollars to pay in part his expenses. The agreement seemed to contemplate that they should pay for the property in cash. Gardner succeeded in buying from the owner at three thousand two hundred and fifty dollars, paying five hundred dollars of his own money and taking a bond for title in his own name, by which the obligor bound himself to make title provided the balance was paid in ten days. Upon Gardner's return, he endeavored to let Randell know what he had done, but failed, Randell having been called away from Denison by the sickness of his wife, who was then visiting at a distant point. Randell returned on the last day

for completing the purchase and called upon Gardner; and after discussing the question of raising the money, Gardner said that he could mortgage some property and procure the funds to complete the payment. Randell testified, that it was thereupon agreed between them, that Gardner should borrow the money for ninety days, and that he should have until the end of that period to pay his half, and that when he paid this and one-half of the expenses, Gardner should convey one-half of the property to him. Upon this point Gardner testified, that when he told Randell that he could raise the money to be repaid in ninety days, Randell said: "All right, do that and I will raise the money to redeem it;" but that he "did not say yea nor nay to this." Upon cross examination, when asked if he did not lead Randell to believe that he could pay in ninety days, he said "that he made no answer, but let him believe as he pleased." Gardner raised the money, completed the pur- chase and received a deed to the property in his own name. Just before the expiration of the ninety days, Randell made him a tender of half the purchase money, and demanded a deed to a half interest in the property. He declined the money and refused to convey.

Randell brought this suit to recover an undivided half inter- est in the lot, and obtained a verdict and judgment in his favor. Upon the trial, the defendants asked the court to charge the jury to the effect that, if Gardner paid all the purchase money and took the deed in his own name, plaintiff could not recover, although it had been previously agreed between them that Gardner should purchase the property for both, and that plain- tiff should have ninety days within which to reimburse de- fendant for the advancement so made. The charges presenting this view of the law were refused. The court charged the converse of the proposition, and the action of the court in this matter is assigned as error.

It is insisted, in argument in support of this assignment, that no trust resting in parol can arise under our laws from a con- veyance of lands, unless the consideration be paid by the *cestui que trust* at the time the title passes; and that the case of James v. Fulcrod, 5 Texas, 512, and the subsequent cases following in the same line of decision, are not inconsistent with the position here assumed. But we think this a mistake. The principle announced in the case mentioned is not that a trust is created because the *cestui que trust* has paid the promised consideration

or otherwise performed the stipulations of the agreement on his part, at the time the title was acquired by the trustee; but it is that an agreement between two or more persons for the joint acquisition of land is not a contract for the sale of land, and hence is not required by our statute of frauds to be in writing. Under the English statute of 29 Charles II, parol trusts could not be created by express agreement; but this provision has not been incorporated into our laws. A parol contract, by which two or more persons agree to purchase land for their joint benefit, the title to be taken in the name of one, is valid at common law, and is not prohibited by our statutes, and hence may be enforced here without reference to the question whether the consideration be paid by the *cestui que trust* at the time the deed is taken or not. Why should it make any difference if one party should pay the whole consideration, the other agreeing at the time to refund his proportion at some future date?

Resulting trusts stand upon a different footing. There the law creates a trust in favor of the party who pays the consideration by which the title has been acquired in the name of another; and the rule is that the consideration must be paid and the trust must arise at the very time of the transaction. (Parker v. Coop, 60 Texas, 118.)

Let us apply these principles to the case before us. It is not a resulting trust that is claimed in this case. Here is an agreement between two parties to buy land jointly. One buys under the agreement, taking a bond for title in his own name. A trust immediately arose in favor of appellee upon the execution of the bond. There is evidence to show that after the bond was executed, and before the deed was taken, an agreement was entered into by which the one agreed to advance the money necessary to complete the purchase, and to wait ninety days for the other to reimburse him for his proportion of the money so advanced. The first agreement is not within the statute of frauds, and hence an equitable interest vested in Randell upon the execution of the bond for title. The second is virtually an agreement to advance money by one for another's benefit, in payment of an interest in land already acquired, and is in no sense a "contract for the sale of real estate." The one party agrees to advance the money, and the other to repay it, and the obligations are reciprocal and bind-

ing. We conclude that there was no error in the ruling of the court upon the instructions.

But it is also insisted that because the plaintiff did not pay the money into court, he was not entitled to recover. The plaintiff here seeks equitable relief, and he must offer to do equity. This does not require that he shall plead a tender and pay the money into court. It is sufficient if he shows that he has once made a tender, and still offers to pay the purchase money upon his obtaining a decree for title. (Spann v. Sterns, 18 Texas, 556.) By continuing his tender and paying the money into court, he could have absolved himself from the payment of interest. The defendant is not injured by his failure to do this, since the decree only becomes effectual upon the payment of the money, together with the interest which has accrued subsequent to the tender. (Brock v. Jones, 16 Texas, 447; Haney v. Clark, 65 Texas, 93.)

The verdict and judgment allow plaintiff a credit for one-half of the rents of the property from the time he made a tender of the purchase money. In this there is no error. From that date at least plaintiff was the equitable owner of one-half the lot, and entitled in equity to one-half the rents. Having made his demand for his title and possession, and his demand having been refused, even as the owner of an undivided interest of one-half he had the right to recover at least one-half the income of the property actually received by his co-tenant in possession. The reciprocal rights of the parties upon the tender by plaintiff, and the refusal by defendant, were that the former was entitled to one-half of the property and one-half of the rents at least from that date, and the latter to one-half of the purchase money, with interest at the rate at which it was borrowed, until the tender and interest on this sum at the legal rate until the time of the trial, together with the expenses incident to making the purchase. These rights the judgment secures, and therefore it is not erroneous.

*Affirmed.*